**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KEVIN C. SMURPHAT, II,

                            Plaintiff,

    v.                                        8:19-CV-804
                                                (GTS/CFH)
MICHAEL HOBB, Parole Officer, et al.

                            Defendants.

---

**APPEARANCES:**

Kevin C. Smurphat, II
10-A-2976
Franklin County Correctional Facility
P.O. Box 10
Malone, New York 12953
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION & ORDER

### I. In Forma Pauperis

Plaintiff pro se Kenneth C. Smurphat, II, commenced this action on July 8, 2019, with the filing of a complaint and an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."), Dkt. No. 2. After reviewing plaintiff's application, the undersigned concludes that plaintiff may properly proceed IFP for purposes of filing.[1] The

---

[1] Plaintiff should note that, pursuant to the Prisoner Litigation Reform Act ("PLRA") inmate plaintiffs who have been granted IFP status are still required to pay the $350 reduced filing fee which will be remitted in installments from the inmate's account. 28 U.S.C. § 1915(b). Further, plaintiff will be responsible for all other fees that he may incur in this action, including but not limited to, copying and/or witness fees. See N.D.N.Y. L.R. 5.4(a).

undersigned must now assess plaintiff's complaint pursuant to 28 U.S.C. § 1915(e).

## II.  Initial Review

### A.  Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8 (a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:
> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants, Nance v. Kelly, 912 F.2d 605, 606 (2d Cir.1990) (per curiam), also referred to as "special solicitude." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed.  See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply

3

with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).   However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).  In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### B.  Complaint

Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, 1985 for violations of his civil rights. See generally Compl.  Plaintiff contends that defendant Michael Hobb, his parole officer, divulged personal health information to plaintiff's girlfriend, referred to him in derogatory and demeaning terms, and imposed "special conditions that were extravagant," including allowing contact between plaintiff and his girlfriend only during times Mr. Hobb knew plaintiff and his girlfriend would be at work

4

which "greatly hindered the relationship from flourishing." Id. at 7. Plaintiff further contends that Mr. Hobb engaged in conversations with plaintiff's mother and stepfather wherein he referred to plaintiff in derogatory terms and "imparted false information and divulged protected health information." Compl. at 8. Plaintiff contends that, as a result of these conversations, his stepfather "engaged in a smear campaign at his and plaintiff's place of employment," "began threatening plaintiff with serious bodily harm and death," and harassed plaintiff by threatening to falsely report him to the authorities. Id.

Mr. Hobb accused plaintiff of witnessing his girlfriend staying over at his home, which would have been an unauthorized visit, and that plaintiff had unauthorized contact with his girlfriend's minor child. Compl. at 8- 9. Plaintiff denies this conduct. Id. Mr. Hobb coerced plaintiff into signing a false affidavit admitting contact with the minor child. Id. Mr. Hobb instituted a new special condition "disallowing any and all contact by any means"[2] and that his "failure to agree and sign these documents would result in immediate incarceration." Id. at 10.

In November 2017, plaintiff communicated with his mother and stepfather at which time his stepfather again threatened plaintiff with death. Compl. at 11. Plaintiff reported the threats to Mr. Hobb, the New York State Police, and Washington County Sheriff's Office. Id. Plaintiff contends that as a result of "these extreme circumstances," he "suffered a psychotic break" and was admitted into Glens Falls Hospital Behavioral

---

[2] It is not entirely clear whether the disallowance of "any and all contact by any means" was between plaintiff and his girlfriend or plaintiff and the minor child. Compl. at 9-10.

5

Health Unit. Id. Plaintiff filed "three formal grievances" against Mr. Hobb and defendant Tabone. Id. In November 2017, the "grievances were denied and appealed." Id. Defendants Kirker and Gilbert denied the grievances, stating that the matters would be addressed at an upcoming compliance hearing. Id. at 12

After his discharge from the hospital in November 2017, Mr. Hobb disclosed confidential medical information by disclosing information about plaintiff's admission into the behavioral health unit, as well as "plaintiff's regimen of pharmacotherapy as well as the discharge diagnoses assigned to plaintiff." Compl. at 12. Further, Mr. Hobb falsely told his mother that plaintiff "made threats of physical injury" against his stepfather. Id.

In November 2017, plaintiff's stepfather made further threats against him, and plaintiff reported this to the New York State police. Compl. at 12. Mr. Hobb harassed plaintiff between November 27, 2018, and January 30, 2018, "by randomly accusing plaintiff of a plethora of false allegations," including having unauthorized meetings with his girlfriend in Fort Edward, New York; meeting plaintiff at her residence, "which in fact was the residence of the significant other of plaintiff[']s mother," and "of association with controlled substances and other unlawful activity." Id. at 13.

Plaintiff had a compliance hearing on December 7, 2017, presided over by Hon. Glen T. Bruening. Compl. at 13. Plaintiff was represented by Charles Bayer from Mental Hygiene Legal Services and the New York State Attorney General's Office was represented by "Mr. John Doe." Id. "All parties were in agreement" that plaintiff could resume contact "albeit temporarily by text only" with his girlfriend. Id. Mr. Hobb was

6

notified of this arrangement and told plaintiff that he would notify him when he was permitted to resume this contact with his girlfriend. Id. Plaintiff contacted Mr. Hobb about when he could begin contact, but Mr. Hobb "gave increasingly vague and evasive responses." Id. at 14.

Mr. Hobb contacted the American Red Cross, "of which plaintiff was an active volunteer" and "in essence told them that they should terminate plaintiff's services due to his criminal history along with his mental and emotional stability." Compl. at 14. Mr. Hobb "disclosed false and/or misleading inflamatory [sic] information along with confidential and protected health information." Id.

In December 2017, Mr. Hobb instituted a new condition prohibiting any contact with his stepfather. Compl. at 14. Because plaintiff and his stepfather worked at the same location, this condition "effectively caused plaintiff to terminate his employment." Compl. at 14-15. On December 20, 2017, Mr. Hobb strip frisked plaintiff, "leaving him in only his boxer shorts for the duration." Id. at 15. Defendant Hoatling noticed plaintiff's state of undress and "upon concluding his inflammatory pronouncement, Defendant Hoatling began to berate plaintiff. In response to Defendant Hoatling's obstreperous barrage of explatives [sic,] several parole officers, parolees and other employees witnessed the tirade against plaintiff along with plaintiff[']s state of undress exacerbatin [sic] plaintiff[']s humiliation." Id.

Defendants Hobb and Hoatling then "coerced plaintiff into signing an additional affidavit falsly [sic] claiming third-party contact with Mrs. Ashline [his girlfriend] assisted by his mother and grandfather. Refusal to author and sign said document would result

7

in immediate incarceration." Compl. at 16. Mr. Hobb threatened plaintiff with incarceration if he continued to attempt to "rescind" the special condition prohibiting contact between plaintiff and his girlfriend. Id. Plaintiff was also threatened with "the disapproval of residence and a new condition disallowing contact with his mother" and threatened plaintiff "with his mother[']s incarceration due to her 'alleged' interference." Id.

On January 30, 2018, plaintiff had defendants Hobb, Sawyer, Reif, and Bailey made an unannounced home visit. Compl. at 17. Defendants placed plaintiff in handcuffs and told him to remain at the kitchen table while Bailey stood guard over him. id. Hobb, Sawyer, and Rief searched the residence, causing "unnecessary, unwarented [sic], and vengeful destruction of plaintiff[']s personal property." Id. Specifically, Mr. Hobb "unceremoniously tossed everything onto the bed, to include, but not limiter to food, drink and an ashtray thus causing permanent damage." Id. Hobb then threatened plaintiff's mother, who is the homeowner, "with plaintiff[']s incarceration as well as further damage to property, if she refused him permission to search other private areas of which plaintiff did not have access to, specifically [plaintiff's mother's] bedroom." Id. at 17. Plaintiff contends that during the search, Bailey "made several comments . . . that insinuated he was privy to Defendant Hobb's insidious scheme to incarcerate plaintiff with or without cause," including that "'even if nothing is found, it is still suspecious [sic]." Id. at 18. Hobb "claimed that due to unauthorized items found in plaintiff[']s possession, that Defendant Senior Parole Officer Tabone authorized a warrant." Id. Mr. Hobb took plaintiff into custody and brought him to the Washington

8

County Jail "to await parole revocation proceedings." Id. at 18.

On January 31, 2018, Mr. Hobb "authored a violative report that was patently false and misleading. Defendant Hobb in several instinces [sic] outright lied in said report." Compl. at 18. Mr. Hobb "made it very clear that if plaintiff contested the hearing in anyway [sic] he would guarantee an additional violation of plaintiff[']s regimen of Strict and Intensive Supervision and Treatment." Id. at 19. Plaintiff contends that a parole violation "would subject plaintiff to the possibility of a life term of commitment to a psychiatric hospital, effectively hadicaping [sic] plaintiff from obtaining justice and relief through the administrative process." Id. at 19.

Plaintiff "requests an order declaring that the defendants acted in a maner [sic] that deprived him of his state and federal statutory rights as well as the rights conferred by and enumerated in the Constitution of the United States and the ammendments [sic] thereof." Compl. at 19. Plaintiff "requests an injunction obviating the authority of the defendants, their superiors as well as their subordinates, an all other employees of the Department of Corrections and Community Supervison [sic] (DOCCS) and the Office of Mental Health (OMH) to supervise in any capacity the plaintiff in regards to any and all criminal, civil, and administrative proceedings occuring [sic] before this date against plaintiff." Id. Plaintiff demands compensatory damages "in no event less than three-million two-hundred-fifty thousand dollars ($3,250,000). Id. at 20. Plaintiff additionally seeks punitive damages "in no event less than one-million eight-hundred thousand dollars ($1,800,000). Id.

**C. Review of Complaint**

9

Here, plaintiff appears to be challenging the terms and conditions of his parole as well as the parole revocation and alleging that defendants engaged in a conspiracy to violate his constitutional rights, including an apparent conspiracy to re-incarcerate plaintiff. See generally Compl. In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994).

Because, from what can be determine from the complaint, the parole revocation has not been reversed or set aside, plaintiff's section 1983 conspiracy claims appear barred by Heck. Further, plaintiff's conspiracy claim "goes to the heart" of the constitutionality of his parole terms and revocation, it "call[s] into question the validity" of the revocation, and, therefore, is not cognizable under section 1983. Partee v. City of Syracuse, 5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at *7 (E.D.N.Y. May 23, 2019) (quoting Burns v. Nassau Cty. Dist. Attorney, No. 14-CV-5540, 2017 WL 9485714, at *11 (N.D.N.Y. Jan 12, 2017), report & recommendation adopted by 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), citing Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y.

10

2002)).³ Further, insofar as plaintiff challenges the terms and conditions of his parole, which plaintiff contends were applied as a conspiracy among defendants to violate his constitutional rights, this claim also "would necessarily imply the validity of his parole revocation." Partee, 2019 WL 2617901, at *7 (quoting Robinson v. N.Y. State Dep't of Corr. Servs., No. 08-CV-0911, 2008 WL 4560098, at *2 (N.D.N.Y. Oct. 8, 2008)). Accordingly, it is recommended that, insofar as plaintiff's complaint attempts to raise claims challenging the constitutionality of the terms or his supervised release or the revocation of said release, it is recommended that these claims be dismissed without prejudice as barred by Heck.

Insofar as plaintiff contends that defendants damaged his personal property during the search of his home, arguably, plaintiff seeks to set forth a claim for excessive property damage in violation of the Fourth Amendment. See Compl. at 17. The Second Circuit has made clear that "'[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.'" U.S. v. Howard, 489 F.3d 484, 497 (2d Cir. 2007) (quoting United States v. Ramirez, 523 U.S. 65, 71 (1998)). However, "it is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.'" Diaz v. City of New York, 00-CV-2944 (JMA), 2006 WL 3833164, at *7 (E.D.N.Y. Dec. 29, 2006) (quoting Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995)). "[T]he Supreme Court has held that a

---

³ Unpublished decisions cited within this Report-Recommendation & Order have been provided to plaintiff.

11

'seizure' under the Fourth Amendment 'occurs when there is some meaningful interference with an individual's possessory interests in that property.'" Heidorf v. Town of Northumberland, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (quoting Soldal v. Cook County, Illinois, 505 U.S. 56, 61 (1992) (additional internal quotation marks omitted)). For a plaintiff to succeed on a Fourth Amendment claim for destruction of property, he "must establish 'that the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant' or search occurred."  Jackson ex rel. Jackson v. Suffolk County, 8 F. Supp. 3d 386, 401 (E.D.N.Y. 2015) (internal citation omitted).  However, "'[s]ome property damage caused during a lawful search is not per se unreasonable within the meaning of the Fourth Amendment . . . . The reasonableness of the damage must be evaluated with reference to the target of the search,' such as a more invasive contraband search."  Id. at 401-02 (quoting Koller v. Hillerbrand, 933 F. Supp 2d 272, 278 (D. Conn. 2013)).

Here, it does not appear that any such damage was excessive.  Plaintiff suggests that unspecified items were permanently damaged because defendants Hobb, Sawyer, and Reif "unceremoniously tossed everything onto the bed, to include, but not limited to food, drink and an ashtray thus causing permanent damage."  Compl. at 17.  However, plaintiff has not provided the Court with sufficient information surrounding the search – such as the target of the search and whether any contraband was found as a result of the search such that the Court can assess the reasonableness.  Jackson, 9 F. Supp 3d at 401.  Accordingly, in light of special solicitude, it is recommended that plaintiff's claim insofar as it may be interpreted as contending that

defendants caused excessive property damage resulting from the search in violation of his Fourth Amendment rights be dismissed without prejudice.

Plaintiff next contends that defendant Hobb wrongly disclosed his health information to his girlfriend, mother, stepfather, or the American Red Cross; referred to him in derogatory terms to his girlfriend, mother, stepfather, and/or the American Red Cross; shared "horror" stories with his girlfriend about other persons he was assigned to supervise; and caused him embarrassment/humiliation by leaving him in his boxer shorts after a search.  Compl. at 7-8.  Plaintiff also contends that Mr. Hobb amended the terms of his supervision by prohibiting plaintiff from any contact with his stepfather, which "effectively caused plaintiff to terminate his employment as Mr. Whitney [the stepfather] was employed at the same location."  Compl. at 14-15.

Liberally read, plaintiff suggests that defendant Hobb engaged in verbal harassment, verbal abuse and/or potentially unprofessional conduct.  See Compl. at 7-8, 14-15.  However, plaintiff fails to demonstrate how this conduct amounts to a violation of his constitutional rights as verbal harassment, without a showing of actual injury, is not actionable pursuant to section 1983.  See Gill v. Hoadley, 261 F. Supp.2d 113, 129 (N.D.N.Y. 2003) (collecting cases) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."); Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or

13

reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under ... § 1983"). To the extent plaintiff may allege that his "injury" was the change in the terms of his parole or his parole revocation, as noted above, this claim would appear barred by Heck as plaintiff cannot challenge the terms, conditions, or revocation of his parole unless he demonstrates the revocation has been overturned or otherwise deemed invalid by a court of law. Accordingly, it is recommended that, insofar as plaintiff contends that defendant Hobb or any other defendant violated his unspecified constitutional rights by disclosing health information, referring to plaintiff in derogatory terms to his stepfather or others, leaving him in his boxer shorts, this claim be dismissed with prejudice. Insofar as plaintiff argues that Hobb's conduct resulted in alterations to the terms and conditions of his parole – including the loss of his employment due to the no contact provision involving his stepfather – for the reasons discussed above, it is recommended that this claim be dismissed without prejudice should plaintiff be able to overcome the Heck bar.

Plaintiff makes several claims about being harassed or threatened by his stepfather as a result of Hobb's alleged statements to plaintiff's stepfather. Compl. at 8, 11-12. Plaintiff appears to argue that because his stepfather threatened and harassed him as a result of defendants' alleged actions in disclosing information to the stepfather, defendants' should be held liable for violating plaintiff's unspecified constitutional rights. Id. Plaintiff has set forth no cognizable legal argument supporting a finding that his stepfather, a private actor, could somehow be subject to liability under section 1983. Thus, even reading this potential argument liberally, the Court does not see how

14

plaintiff can set forth any cognizable constitutional claim as a result of the stepfather's alleged conduct or demonstrate that defendants' alleged conduct of sharing health or personal information about plaintiff is not too far attenuated from the stepfather's alleged resultant threats.  Plaintiff fully fails to show how defendants' alleged conduct of disclosing personal information to plaintiff's stepfather, which apparently resulted in the stepfather's threats to plaintiff, would be violative of section 1983.[4]  Thus, it is recommended that any such claims relating to defendants' disclosure of information to plaintiff's stepfather or others be dismissed with prejudice.

Arguably, plaintiff's complaint, read liberally, may suggest that, in violation of the Fourteenth Amendment,[5] defendants failed to protect him from his stepfather's threats or harassment despite the fact that he alerted them about the harassment/threats.  Compl. at 8, 11-12.  The Court is unaware of case law out of the Second Circuit addressing the government's duty to protect an individual from a third party when the plaintiff was not in state custody.  However, the Eleventh Circuit has been instructive:

> In general, the government does not violate the Due Process Clause of the Fourteenth Amendment by failing to protect an individual against private violence. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In certain limited circumstances, the Due Process Clause will impose on the

---

[4] It is noted that a plaintiff cannot base a federal constitutional claim based on a defendant's negligence.  Thus, insofar as plaintiff may seek to argue that defendants were negligent insofar as they disclosed certain information to the stepfather, and that due to that disclosure, the stepfather made threats against him, such would fail to state a claim.  See generally Davidson v. Cannon, 474 U.S. 344 (1986) (holding that a prisoner could not base a federal civil rights action against prison officials for their negligent failure to protect).

[5] As plaintiff was a parolee, any such claim would arise under the Fourteenth Amendment, rather than the Eighth Amendment.

15

> government an affirmative duty of protection, which arises from the government's affirmative act of restraining the individual's freedom through incarceration, institutionalization, or other similar limitation of personal liberty. Id. at 194-200, 109 S.Ct. 998. Thus, if the victim was not in the government's custody, state officers may only be held liable for a substantive due process violation if they are engaged in behavior that is "arbitrary or conscience shocking in a constitutional sense." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003).

Hilderbrand v. Sanders, 495 F. App'x 6, 7-8 (11th Cir. 2012). Although plaintiff was under parole supervision, as plaintiff was not in state custody at the time of the alleged threats from the stepfather, under this standard, defendants' conduct would have to be "arbitrary" or "conscious shocking." See id. Here, the conduct in question is Mr. Hobb's alleged disclosure of health information and referral to plaintiff in derogatory terms. Even if plaintiff faced annoyance or fear from the stepfather's conduct, plaintiff did not demonstrate injury as a direct result of defendants' alleged disclosure. The alleged disclosure does not shock the conscious such that plaintiff could set forth a claim of failure to protect in violation of the Fourteenth Amendment. Accordingly, insofar as plaintiff's complaint may be interpreted as contending that defendants failed to protect plaintiff from his stepfather's threats, it is recommended that this claim be dismissed with prejudice.

### III. Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Leave to Proceed In Forma Pauperis, dkt.

16

no. 2, is **GRANTED**; and it is

RECOMMENDED, that plaintiff's complaint, dkt. no. 1, be **DISMISSED**: (1) plaintiff's Fourth Amendment excessive property damage claim be dismissed **without prejudice** as set forth herein; (2) plaintiff's claims relating to the terms and conditions of his parole and his apparent parole revocation be dismissed **without prejudice** and with opportunity to amend <u>only if</u> plaintiff can overcome the <u>Heck</u> bar; and (3) the remainder of plaintiff's complaint be dismissed **with prejudice**; and it is further

RECOMMENDED, that if the District Judge adopts this Report-Recommendation & Order and permits an amendment as set forth herein, any amended complaint must be filed within thirty (30) days of the filing of the Order adopting this Report-Recommendation & Order and if plaintiff fails to file an amended complaint within that time frame, the case be closed without further order of the Court.[6]

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within **fourteen (14) days** after being served with a copy of the . . . recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  FAILURE TO OBJECT TO THIS REPORT WITHIN **FOURTEEN** DAYS WILL PRECLUDE APPELLATE REVIEW.  <u>Roldan v.</u>

---

[6] Plaintiff is advised that, if he is permitted to file an Amended Complaint, the Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety. Plaintiff is further advised that, in any such Amended Complaint, he may not re-assert any claims that have been dismissed with prejudice by the Court.

17

Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); F̲ED̲. R. C̲IV̲. P. 72, 6(a), 6(e).[7]

    Dated: September 27, 2019
    Albany, New York

*[signature: Christian F. Hummel]*

Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. F̲ED̲. R. C̲IV̲. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

18